UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| CATHY ANGELINE BROOKS-HARRIS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:18-CV-0097 |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 12] for disposition and entry of a final judgment. Plaintiff's Disability Insurance Benefits ("DIB") application under the Social Security Act, Title II, was denied after a hearing before an Administrative Law Judge. This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party has filed a dispositive motion [Docs. 13 & 15] and supporting memorandum [Docs. 14 & 16].

**I.    APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the Administrative Law Judge ("ALJ") and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). A court may not try the case *de novo*, resolve conflicts in the

1

evidence, or decide credibility issues. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4).

The claimant has the burden to establish entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d

510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Court may consider any evidence in the record regardless of whether it was cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

II.     **PROCEDURAL AND FACTUAL OVERVIEW**

Cathy Angeline Brooks-Harris ("Brooks-Harris") has twice applied for Title II DIB benefits. Her first application was submitted in January 2013 (Doc. 6, Transcript p. 53) (reference to "Tr" and the page denote the administrative record). She alleged an onset date of August 26, 2012 (*Id.*). On this application, the ALJ found Brooks-Harris was not disabled from the onset date through the date of his decision on July 18, 2014 (Tr. 53). She unsuccessfully appealed the decision to this Court. *See Brooks-Harris v. Comm'r of Soc. Sec.*, 2:15-CV-252 (E.D. Tenn. July 28, 2016)..

While her first appeal to this Court was pending, Brooks-Harris filed her second application on August 11, 2015, alleging disability due to the same general conditions (Tr.15). She alleged an onset date of July 19, 2014. This claim was initially denied in November 2015 and upon reconsideration in March 2016 (*Id.*). An ALJ conducted a hearing on October 17, 2017 (*Id.*). Brooks-Harris and a vocational expert ("VE") testified (Tr. 32-49). The ALJ found Brooks-Harris not disabled on December 27, 2017 (Tr. 15). The decision is before this Court for review.

The ALJ concluded Brooks-Harris, a claimant with a high school education who was closely approaching advanced age, met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since July 2014 (Tr. 17). He found her obesity, residuals of breast cancer treatment, residuals of right hand and left wrist fractures, and cervicalgia were severe but determined her mental conditions were not (*Id.*). The ALJ found Brooks-Harris does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24).

3

The ALJ next found Brooks-Harris retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 18). He determined she could frequently push and pull with the right upper extremity, climb ramps and stairs, balance, stoop, crouch, and crawl. However, she was limited in reaching with her right extremity, could never climb ladders, ropes or scaffolds and should only have occasional hazard exposure (*Id*.). Even though he found no severe mental conditions, the ALJ determined Brooks-Harris could understand, remember and carry out simple and detailed instructions and concentrate and persist on tasks for two-hour periods during an eight-hour work day (Tr. 19). In reaching this RFC, the ALJ examined the record and evaluated expert evidence (Tr. 19-23). The expert evidence was comprised of reports from two State agency medical reviewers, Reeta Misra, M.D. and James Millis, M.D., an examining medical consultant, Robert A. Blaine, M.D., two State agency psychological reviewers, Rebecca Sweeney, Ph.D. and Edward Sachs, Ph.D. (Tr. 77-92, 95-111), and an examining psychological consultant, Wayne Lanthorn, Ph.D. The history also contains a June 10, 2014, medical record prepared by a nurse practitioner, Nancy Pace, and signed by both Ms. Pace and Dr. Chad Bates. It reflects that Brooks-Harris should not return to work (Tr. 533). The ALJ he did not assign weight to this record.

On October 19, 2015, Brooks-Harris underwent a consultative psychological exam for Dr. Lanthorn's consulting opinion. Based upon a review of her history, reports of improvement with medication and his exam, Dr. Lanthorn opined that "from a psychological point of view, the claimant has almost no limitations preventing her from sustaining gainful employment" (Tr. 22).

On October 26, 2015, Dr. Sweeney prepared a mental RFC report based upon records gathered by the Commissioner through mid-October 2015 (Tr. 87-89). She found Brooks-Harris suffered from a severe affective disorder (Tr. 82). She identified no limitations in Brooks-Harris's understanding and memory or social interactions. However, she felt Brooks-Harris was moderately limited in concentration and persistence, specifically her ability to complete a normal workday and work week

4

without interruptions from psychologically-based symptoms and ability to perform at a consistent pace without an unreasonable need for rest periods (Tr. 87-88). Dr. Sweeney concluded Brooks-Harris could maintain concentration, persistence and pace under normal supervision and with appropriate breaks (*Id.*). For adaptation limitations, she found Brooks-Harris was moderately limited in her ability to respond appropriately to work setting changes but could adapt to infrequent change. On February 8, 2016, Dr. Sachs prepared an opinion for reconsideration (Tr. 100, 106-07). He concurred with Dr. Sweeney's opinions with the exception that he felt Brooks-Harris was moderately limited in her ability to maintain attention and concentration for extended periods (*Id.*).

On November 3, 2015, Brooks-Harris underwent a consultative physical exam for Dr. Blaine's report (Tr. 337-40). She reported back pain that radiates to her right hip, groin, and sometimes to her right knee. She noted occasional foot numbness and that medication and chiropractic care provide some pain relief. She claimed prolonged standing, bending and squatting worsen her pain. Brooks-Harris also reported left heel pain from a 1995 fracture for which medication gave minimal relief. She noted her continued use of crutches prescribed after the 1995 injury and the cane she obtained without a prescription. Brooks-Harris also advised Dr. Blaine of her breast cancer history and treatment and hypertension.

On exam, Brooks-Harris moved to and from the exam table without difficulty. Dr. Blaine conducted a variety of range of motion tests and recorded the results but did not explain whether the results revealed abnormalities. His neurological review revealed intact sensation and full grip, flexor and extensor strength. She showed some limitation in the right straight leg raise, but none on the left, along with limitations in reflexes. Brooks-Harris had a normal station and single leg stand but showed a mild limp favoring her right leg. Her tandem and heel-toe walks were normal, and she could squat halfway to the floor. Dr. Blaine diagnosed low back pain, history of a left calcaneus fracture, breast cancer status post reconstruction, hypertension and morbid obesity (Tr. 339). He concluded Brooks-

Harris could sit for 8 hours in a work day with reasonable rest breaks but could only stand or walk for 3 hours due to limitations from back and lower extremity pain (Tr. 340). He felt she could lift 5 pounds frequently and 30 pounds infrequently (*Id*.).

On November 24, 2015, Dr. Misra prepared an initial physical RFC opinion (Tr. 82-88). She diagnosed severe spine disorders, major joint dysfunction, disorders of muscle, ligament and fascia and non-severe malignant breast neoplasm (Tr. 82). Dr. Misra limited Brooks-Harris to occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds (Tr. 85). She felt Brooks-Harris could stand, walk, and/or sit for 6 hours in an 8-hour workday and frequently perform all posturals other than climbing ladders, ropes and scaffolds (*Id*.). Dr. Misra felt Brooks-Harris was limited to frequent reaching and handling. She did not impose visual, communicative, or environmental limitations (*Id*.). On February 8, 2016, Dr. Millis prepared an opinion for reconsideration (Tr. 101, 103-05). Except for his finding Brooks-Harris should avoid concentrated hazard exposure, he concurred with Dr. Misra.

In reaching the RFC, the ALJ assigned significant weight to the opinions of Drs. Misra and Millis (Tr. 21). He found their determinations that Brooks-Harris could perform less than a full range of light work were consistent with the objective medical evidence, treatment notes and her activity reports (Tr. 21). He assigned little weight to Dr. Blaine's report since Brooks-Harris's reported activities and the objective evidence did not support his restrictive conclusion. The ALJ assigned significant weight to Dr. Lanthorn's consultative psychological report as it was consistent with Brooks-Harris's history, the reports that her medication was effective, and her lack of pursuit of therapy or counseling (Tr. 22). He assigned some weight to the reports of Drs. Sweeney and Sachs, including their determination that the claimant's affective disorder was severe but felt the reasons that warranted assignment of great weight to Dr. Lanthorn's report required he discount these opinions.

Ultimately, based upon the RFC and a review of Dictionary of Occupational Titles' ("DOT")

classification of Brooks-Harris's prior work, the ALJ determined she could not perform her medium, skilled past relevant work as a web press operator (Tr. 23). The ALJ proceeded to step five and found, based upon VE testimony, that significant numbers of jobs exist in the national economy that Brooks-Harris could perform. (*Id*.). The ALJ concluded that she was not disabled (Tr. 24). The Appeals Council denied Brooks-Harris's review request (Tr. 1).

## III. ANALYSIS

Brooks-Harris contends the ALJ erred in the formulation of her residual functional capacity by failing to properly evaluate certain expert opinions. She first argues the ALJ erred by failing to address the content of a June 10, 2014, family practice record regarding whether she may return to work and asserts the record constitutes a treating source opinion. She next alleges the ALJ failed to properly evaluate the opinions of the State agency medical reviewers and the examining medical consultant, Dr. Blaine, and fails to include certain records relating to these opinions. She specifically contends the ALJ erred by rejecting the reviewers' reaching and handling limitations and Dr. Blaine's exertional restrictions.

### A. The ALJ's rejection of an opinion from an alleged treating source.

On December 10, 2013, Brooks-Harris visited Dr. Jennifer Shafer for a check-up at Holston Medical Group's ("HMG") family practice office (Tr. 543).[1] During this 2013 visit, Dr. Shafer wrote a brief history of Brooks-Harris's illnesses and indicated that while she had a number of chronic problems, her pain "had improved since starting with a chiropractor and beginning whole supplements" from a compounding pharmacy (Tr. 543). The physician listed over 40 active problems and provided a brief treatment plan for approximately 10 before listing Brooks-Harris's current medications. (Tr. 543-45). The physician noted normal findings in all areas of the physical exam and

---

[1] Although she was an established patient, the Transcript contains no prior treatment records.

that Brooks-Harris had a normal affect (Tr. 547). The record lists hypothyroidism, prediabetes, hypertension and hyperlipidemia as the particular conditions assessed and for which Dr. Shafer prepared a new treatment plan. Dr. Shafer also renewed Brooks-Harris's muscle relaxant (Tr. 548). At the record's conclusion, Dr. Shafer recorded Brooks-Harris's various medications, dosages and usage instructions along with an entry stating: "RETURN TO WORK; Patient was seen in the office today Return 10/9/2013; Therapy 08Octo2013 to (Last Rx: 08Oct2013) Ordered" (Tr. 548-49). No explanation was provided for this entry or the reference to a return visit that precedes the December 2013 appointment addressed by this record.

Brooks-Harris returned to HMG on June 10, 2014, for a check-up, review of lab results, and medication refills (Tr. 533). She saw nurse practitioner Nancy Pace. In the history of present illness section, Ms. Pace cited the reasons for the visit and, among other things, noted that Brooks-Harris sees a chiropractor for back pain, has some ankle swelling for which she takes medication, has no problems with her medications, uses Weight Watchers, and recently experienced fatigue (*Id.*). Ms. Pace next listed Brooks-Harris's current medications and active problems. These were the same as those listed in the December 2013 record with the same narratives. Ms. Pace noted normal findings in all areas of her physical exam while describing Brooks-Harris's mood as euthymic (Tr. 547). At the conclusion of the record, Ms. Pace included an "Orders" section comparable to the final section of Dr. Shafer's December 2013 record. Here, she renewed prescriptions previously issued by the family practice, discontinued certain medications, and scheduled Brooks-Harris's next visit (Tr. 536). She also wrote "Discontinue RETURN TO WORK," but gave no explanation for including this note or clarification as to whether it was intended to prevent Brooks-Harris from returning to her prior employment or all work. The note made no discussion of whether she could perform other jobs.

Brook-Harris contends the ALJ erred by failing to address this June 10, 2014, HMG record containing the "Discontinue RETURN TO WORK" phrase (Tr. 533-36). She asserts the record is a treating source opinion that should have been weighed under 20 C.F.R. § 404.1527(c). She concedes

8

the record addresses an issue reserved for the Commissioner, but urges it remains an "opinion" that must be considered [Doc. 14, p. 17]. The Commissioner responds that the record does not constitute a medical opinion, was not provided by an acceptable medical source who qualifies a treating source, is irrelevant since it reflects the claimant's condition during a period for which she has already been found not disabled and predates the alleged July 2014 disability onset [Doc. 16, p. 11]. Likewise, even if considered, the Commissioner argues the record does not support a disability finding [*Id*.].

For disability claims filed prior to March 27, 2017, 20 C.F.R. § 404.1527 establishes the process for evaluation of medical opinions in disability cases. Not all opinions qualify as "medical opinions." Only opinions that are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's impairment(s)], including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical and mental restrictions" are considered medical opinions. *Id*. at § 404.1527(a)(1). An "acceptable medical source" refers to a several types of medical and mental health professionals, including physicians. 20 C.F.R. § 404.1502(a). However, where a medical source offers an opinion on an issue reserved to the Commissioner, such as the assertion that a claimant is disabled or "unable to work," it does not qualify as a "medical opinion" for purposes of 20 C.F.R. § 404.1527(a)(1) and is not to be assigned any special significance when reviewed. 20 C.F.R. 404.1527(d).

The Court finds the "Discontinue RETURN TO WORK" is an opinion regarding an issue reserved to the Commissioner, i.e. whether a claimant is disabled or capable of performing work, as Brooks-Harris concedes. *See* 20 C.F.R. § 404.1527(d). Although the regulations contemplate that such an opinion will be considered by the Commissioner, the Court find's the ALJ's decision not to explicitly address or discuss the phrase was, at worst, harmless error. This is because the ALJ implicitly rejected any conclusion that Brooks-Harris was unable to work by providing a comprehensive review of the medical evidence, her treatment history and other opinions in the record

which demonstrated she possesses the RFC to perform light work with certain restrictions. *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F.App'x 430, 432 (6th Cir. 2016); *see also Wreede v. Comm'r of Soc. Sec.,* 2019 WL 1324024, at *21 (N.D. Ohio March 24, 2019), *Malm v. Comm'r of Soc. Sec.*, 2018 WL 3373100, at *5 (E.D. Mich. July 11, 2018). Importantly, the Court further notes that June 2014 record predates the July 2014 disability onset. Thus, it fails to address Brooks-Harris' status at the time of onset.

**B.      The ALJ's consideration of consulting and reviewing opinions.**

An ALJ must adhere to certain standards in assessing State agency reviewer and consulting examiner evidence and review several regulatory factors, including the nature of the examining relationship, the opinion's supportability, the opinion's consistency with the record as a whole, any specialization of the physician and other factors brought to the Commissioner's attention that tend to support or contradict the opinion. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544; 20 C.F.R. § 404.1527(c). An ALJ is not required to make a wholesale adoption of a review or consultant's opinions or recommendations. *See Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015); s*ee also Webster v. Colvin*, No. 3:14-CV-253, 2015 WL 4921633, at *9 (E.D. Tenn. Aug. 18, 2015). Rather, the ALJ bears the responsibility for determining the scope of a claimant's capacity to work. *Nejat v. Comm'r of Soc. Sec*., 359 F.App'x 574, 578 (6th Cir. 2009).

**1.      The weight assigned the State agency medical reviewer opinions.**

Brooks-Harris contends the ALJ erred in his evaluation of the State agency medical examiner reports because he failed to explain why he rejected the reviewers' limitation to frequent reaching and handling despite assigning significant weigh to their opinions. The Court disagrees.

Drs. Misra and Millis each recommended Brooks-Harris be limited to frequent handling and reaching in their opinions. The ALJ assigned significant weight to these opinions because he found them consistent with and supported by the objective medical evidence, treatment notes and the

claimant's own activity reports but did not adopt the manipulative limitations (Tr. 21). The ALJ explained the exclusion of these limitations because Brooks-Harris reported regaining range of motion following her October 2016 wrist surgery. Brooks-Harris also reported to Dr. Lanthorn in late 2015 that she was able to perform a range of tasks, including include cooking, cleaning, grocery shopping, dog walking and doing the laundry, that are inconsistent with manipulative limitations. Further, the Court observes that the October 2016 surgical status report did not exist when the State agency reviewers prepared their reports. They were unable to consider this inconsistency in contrast to the ALJ who had the complete record.

The ALJ's decision to exclude manipulative limitations is also supported by his broader analysis of Brooks-Harris's subjective claims. With regard to limitations in her upper right arm, she claimed she had post-mastectomy weakness and range of motion limitations. However, as the ALJ noted, she did not report these issues to her provider and denied weakness, pain and decreased range of motion during treatment in March 2014. (Tr. 263). She was then found to have full range of motion in June 2015 after reconstruction surgery (Tr. 20, 263, 329). With regard to her hands and wrists, Brooks-Harris fell and sustained a left radius fracture and a right small finger fracture in October 2016 (Tr. 20, 387). She underwent surgery for the wrist fracture in November 2016; her finger was treated nonoperatively (Tr. 380). As the ALJ observed, Brooks-Harris reported having regained her range of motion and ability to perform normal activities during a January 5, 2017, follow-up (Tr. 20, 379). Similarly, her physician recorded that imaging showed her injuries were well-healed, and she had "nearly full range of motion" in her left wrist and full range of motion in her right hand (*Id.*). Brooks-Harris later complained of a "trigger finger" condition in her right middle finger but felt steroid injections helped. She continued to receive this treatment through the fall 2017 (Tr. 20, 417). The ALJ noted that this was inconsistent with Brooks-Harris's allegations as to the limiting effects of

her mastectomy surgery and wrists conditions.[2] The Court finds the various grounds cited by the ALJ in discussing both the claimant's subjective allegations and the weight assigned to the reviewers readily support the exclusion or rejection of manipulative limitations from Brooks-Harris's RFC. The Court finds substantial evidence supports the ALJ's rejection of the reviewer's manipulative limitations.

Lastly, and regardless of whether substantial evidence exists, the Court notes that exclusion of the reviewers' recommended reaching and handling limitations would be harmless error. The manipulative limitations at issue would not impact Brooks-Harris's ability to perform the jobs identified by the VE because the jobs are defined in the DOT descriptions as requiring *no more than frequent* reaching and handling. *See* DOT 211.462-010, 1991 WL 671849 (cashier), DOT 299.677-010, 1991 WL 672643 (sales attendant), DOT 706.684-022, 1991 WL 679050 (small products assembler) (each stating "Reaching: Frequently - Exists from 1/3 to 2/3 of the time" and "Handling: Frequently - Exists from 1/3 to 2/3 of the time"). Thus, the very limitations Brooks-Harris believes the ALJ should have adopted were already addressed in the descriptions for the jobs the VE identified and would not prohibit her performance of such jobs.

**2. The weight assigned to the opinion of the consulting examiner, Dr. Robert Blaine.**

Brooks-Harris next contends the ALJ erred in his evaluation of Dr. Blaine's consulting exam report because he failed to explain why he rejected the opinion that she should be limited to standing or walking three hours in a full work day and lifting 30 pounds infrequently and 5 pounds frequently. Brooks-Harris secondarily argues that the record does not provide grounds for the ALJ's determination that objective medical findings do not support Dr. Blaine's opinion because the

---

[2] Although not cited by the ALJ, Dr. Blaine did not opine that Brooks-Harris had any manipulative limitations following his consulting exam and that none of her treatment providers required any reaching or handling limitations beyond those imposed immediately following her surgeries.

exhibits did not include Dr. Wayne Gilbert's 2013 consulting examiner report or certain imaging information considered for the 2013 claim. Brooks-Harris believes the ALJ could not properly discount Dr. Blaine's opinion without considering these 2013 records and that their inclusion as exhibits would have resulted in a favorable outcome for her.

**a.      Whether an opinion and medical records from 2013 should have been included in the record.**

The records at issue, Dr. Gilbert's 2013 report and imaging information he considered, do not demonstrate Brooks-Harris' status at the time of the July 2014 disability onset for this claim. Next, the Court's review of the exhibits contained in the Transcript reveals that the State agency reviewers cited and discussed Dr. Wayne Gilbert's 2013 report and the imaging information in their 2015 and 2016 reports for the current claim just as Dr. Blaine did in his 2015 report. This occurred even though Dr. Gilbert's report and the imaging documents for Brooks-Harris's right hip and left foot were not included as exhibits to the ALJ's decision (Tr. 81-82, 85-86, 99, 103, 105, 340). Brooks-Harris certainly had ample opportunity to discover the reviewers' consideration of these materials because she was provided online access to the proposed exhibits via the Social Security Administration website in the fall 2016 (Tr. 242). Similarly, she was entitled to review the evidence in her case file at the time of the hearing or at an earlier date upon request per 20 C.F.R. § 404.916(b)(3). She was also entitled to present additional evidence under section 404.916(b)(3). In fact, the hearing transcript reflects the ALJ asked Brooks-Harris, via her counsel, whether she had an objection to the proposed exhibits at the outset of the hearing in October 2017 (Tr. 32). They did not and they did not request Dr. Gilbert's report be included. Accordingly, the Court concludes Brooks-Harris waived any objection to the exhibits considered by the ALJ and which now comprise the Transcript.

Regardless of the foregoing, the imaging results for her right hip and left heel and Dr. Gilbert's examination findings, diagnoses and recommendations were described in detail in the prior ALJ's

decision, which *was* included as an exhibit (Tr. 58-59). Notably, it describes the x-ray of Brooks-Harris's right hip as normal, so it is unclear how the x-ray report itself might have prompted a disability finding on the present claim. Evidence of normalcy, whether via summary or the report itself, does not support RFC limitations. The Court cannot find that inclusion of Dr. Gilbert's report and the x-ray records as exhibits, as opposed to the detailed summary in the prior decision, would alter the outcome here.

b.     **The ALJ's evaluation of Dr. Blaine's opinion.**

Brooks-Harris contends the ALJ erred in his evaluation of Dr. Blaine's November 2015 consulting exam report and argues the record and the decision itself do not support the assignment of little weight to the opinion. The Court disagrees.

The ALJ assigned little weight to Dr. Blaine's opinion because he found the report was internally inconsistent, unsupported by objective medical evidence, and inconsistent with the claimant's own activity reports and other medical evidence of record (Tr. 22). Regarding inconsistency, an issue that 20 C.F.R. § 404.1527(b) indicates should be considered, the ALJ explained that Dr. Blaine's restriction to lifting 30 pounds infrequently suggested a limitation to medium exertional work while the restriction to lifting 5 pounds frequently suggested sedentary limitation. While the Court agrees that these assessments are rather inconsistent given the variance in exertion for medium and sedentary work under 20 C.F.R. § 404.1567, the ALJ resolved the difference in exertional levels by adopting a light RFC. This is a middle point between the lifting levels and is consistent with the State agency reviewer opinions.

The ALJ also felt Dr. Blaine's exertional limitations conflicted with his examination notes and physical findings, such as Brooks-Harris's normal single leg stands, tandem walk, heel-toe walk, and station, her full grip, flexor and extensor strength, and her ability to squat halfway to the floor (Tr. 22). The ALJ found Dr. Blaine's opinions too restrictive given the lack of objective record evidence supporting the existence of a significant impairment. In discussing supportability and

14

consistency, the ALJ cited a range of additional record information, such as Brooks-Harris's pain management physician noting her complaints of pain and inability to work were not supported by objective data, her reports of improvement with treatment, and her reports to the psychological examiner, Dr. Wayne Lanthorn, regarding the various activities she can still perform (Tr. 22). These include walking her dogs, doing laundry, cleaning, watching tv, reading, and visiting the grocery. The Court finds no error in the ALJ's reliance upon this information. In fact, these are the very comparisons and analyses contemplated by 20 C.F.R. § 404.1567 for assigning weight to opinions and determining work capacity.

Lastly, the Court notes that certain evidence not cited by the ALJ supports the assignment of little weight to Dr. Blaine's report. For example, Dr. Chad Bates consistently advised Brooks-Harris to use her pain medication "sparingly" after he became her family physician in April 2015 and her various physicians routinely found she was not in acute distress and only recorded minor abnormalities in her musculoskeletal and neurological systems based on their exams (Tr. 324, 392, 503, 507, 508, 519, 522-23). Although Brooks-Harris was receiving pain management care during the prior claim period for which she was found not disabled in July 2014, there is no indication she continued to pursue this treatment after filing the present claim. The Transcript is devoid of pain management records after July 2014. If anything, this suggests improvement. Similarly, and with the exception of breast reconstruction surgery, Brooks-Harris did not receive specialist care for her conditions during the pendency of her current disability claim. Finally, the Court observes that the substantive content of the June 2014 record in which HMG's personnel recorded "Discontinue RETURN TO WORK" is virtually no different than the December 2013 record content that reflected she was allowed to return to work (Tr. 533-36, 543-49). In other words, there is no change, significant or otherwise, in Brooks-Harris's condition which suggests the development of a limitation in her work capacity precluding her from all work in June 2014.

After considering the reasons cited by the ALJ, which are supported by the record, and the

Court's identification of additional medical history information, the Court concludes substantial evidence supports the ALJ's assignment of little weight to Dr. Blaine's report.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for judgment on the pleadings [Doc. 13] is **DENIED** and the Commissioner's motion for summary judgment [Doc. 15] is **GRANTED**. A separate order dismissing this case shall enter.

SO ORDERED:

s/ Clifton L. Corker  
UNITED STATES MAGISTRATE JUDGE